## Anson W. Aldrich v. George A. Howard.

A bill in equity to enjoin the defendant from erecting a large livery stable in close proximity to the complainant's dwelling house, hotel, and stores, with a prayer for general relief, and containing allegations that the use of the stable, as proposed by the defendant, will cause irreparable damage to the complainant by rendering, from its disagreeable and unwholesome effluvia, its noise, flies, and other nuisances, his dwelling house untenantable, and break up the custom and diminish the rents of his hotel and stores, is not demurrable for want of equity; nor, as stating a case in which the sole remedy of the complainant is at law; nor, because it does not state that the rights of the parties have been settled in favor of the complainant, before the filing of the bill, in an action at law, or does not give some equitable reason why such action has not been first brought.

DEMURRER to a bill in equity to restrain an alleged nuisance.

The bill stated, that the complainant is now, and for many years has been, the owner of a certain lot of land situated on the westerly side of Baker street, in the City of Providence, and that about eight years ago he erected a large, handsome, three-story brick house on said lot, which has ever since been occupied as a dwelling house by the complainant and his tenants, and that the complainant now occupies the lower part thereof; that in the

year 1858, the complainant took a lease of a certain other lot of land situated on the southerly side of Washington street, in said city, for the life of one Lydia B. Wendell, one of the lessors, who is still living; and that the complainant has erected a block of stores on said lot, of wood, two stories high, and measuring about forty-two feet on Washington street and running back about sixty-four feet, and containing three stores, two of which the complainant has agreed to let to certain parties, though the leases have not yet been executed, and that the south or rear end of said lot is about thirty feet from the north line of the westerly part of said first named lot; that the complainant also owns another large lot of land, situated on the north side of said Washington street, opposite said block of stores, and in March, 1859, commenced building a large first-class hotel, which was finished and occupied in January, 1860, as a public hotel, by the name of the Aldrich House, and is now used and occupied as a hotel, under a lease for the period of five years from the first day of January, 1860; that said hotel is four stories high, about sixty-six feet on Washington street by about ninety feet in depth, is well patronized by the public, does a large business, and pays to the complainant a large rent, and that the complainant has expended on the purchase and lease of said lots, and in the erection of said several buildings and their appurtenances, more than sixty thousand dollars; that the defendant, soon after the complainant commenced building his hotel, purchased a large lot of land, situated on the corner of said Washington and Baker streets, opposite said hotel, upon which he is building a large livery stable, covering nearly the whole lot, and measuring about forty-five feet on Washington street, about one hundred feet on Baker street, and about ninety feet on the northerly line of the first described lot of the complainant, and within twenty-eight inches of the complainant's said dwelling house along the entire northerly side thereof, and that the said stable is within six inches of the east side of the complainant's said block of stores for the whole length of said block, and within forty-two feet of the front part of said Aldrich House; that said stable is not yet completed, but the sides and ends of the same are boarded up, and the roof placed thereon, but not shingled, and no floors are yet placed therein,

but that the workmen and servants of the defendant are now engaged in completing said stable, and the same will soon be finished and put into use as a livery stable; that when said stable is completed and appropriated to the use aforesaid, the effect thereof will be such, that the complainant will suffer great and irreparable damage and mischief; that all his said buildings, and especially his said dwelling house and shops, will be exposed to great and imminent danger from fire, on account of the proximity of said stable, and the complainant be subjected to greater expenses in insuring the same than hitherto; that his dwelling house will be rendered untenantable and unfit for occupation on account of the disagreeable, unwholesome, and unhealthy odors and smells that will arise from the manure and filth that will collect in said stable, and on account of the swarms of flies that will be generated there, and on account of the noise and disturbance that will arise from the stamping of horses, and otherwise, in said stable, and on account of other nuisances that will proceed from said stable; that said stores, in consequence of said stable, cannot be so well occupied, nor let to such good advantage, as if said stable were not built, and that from the odors, smells, manure, filth, flies, noise, and other nuisances that will be in and proceed from said stable, the said Aldrich House will lose its popularity and good standing as a public hotel, its business and custom, and the gains and profits thereby derived will be entirely and completely lost, and the complainant will lose the income and profits thereof that otherwise would accrue to him from leasing the same as a hotel, or from keeping the same for such purpose; that said property of the complainant has already been much depreciated in value by the building of said stable, and will depreciate very much more if said stable is completed and occupied for the purpose aforesaid, and that the complainant, in consequence of the building and use of said stable, will sustain other great and irreparable mischief; that the defendant is building said stable in that part of the City of Providence to which the provisions of the statutes concerning the erection of buildings in said city apply, and in direct violation of said statutes, because said stable is more than eighteen feet high from the ground to the highest point of the roof thereof, measuring on that side of the stable next to the

highest part of the lot on which the same stands, and because the external sides and ends of said stable are not constructed of stone or brick, but of wood; that said stable covers a surface of more than six thousand square feet of land, and was built without permission of the Board of Aldermen of said City of Providence; that the complainant has requested the defendant to take down and remove said stable, and had well hoped, &c. The prayer of the bill was, that the defendant might be ordered and decreed to take down and remove the said stable from said lot, and be perpetually enjoined from proceeding to erect and maintain the same, and for general relief.

To this bill, the defendant demurred for want of equity, and because the complainant had an adequate remedy at law, and because it did not appear from his bill that there was any impediment to his bringing an action at law to ascertain his rights and those of the defendant, or that any action or trial, verdict or judgment, had been hitherto commenced or obtained by him for that purpose, or that previously to, or at the time said bill was filed, there was any authentic record of said rights.

Upon the filing of the bill, a motion for a special injunction, in accordance with that prayed in the bill, had been made by the complainant before the Chief Justice, and refused, on the ground, that the nuisance complained of arising from the use, and not from the building of the stable, it would be time enough to apply when the noxious use commenced.

*James Tillinghast, with whom was Bradley, for the defendant:*

This is a bill, filed by a *private individual,* to compel the defendant to take down and remove a certain building, at the time of the filing of the bill in process of erection, (and then far towards completion,) by the defendant, upon his lot on the corner of Washington and Baker streets, in this city, demanding this relief, as we construe the bill, upon two grounds:—

I. That the building, *when completed, is,* as the bill charges, *to be used* as a "livery stable," and as such, *will become* a nuisance.

II. That the building is an infringement of the act "concerning the erection of buildings in the City of Providence." See City Ordinances, pp. 78, &c.

I. As to the first ground, we say: the bill is prematurely filed.

The only averment in the bill of any *present injury*, is, " that your orator's said property has already been much depreciated in value by the building of said stable ;" clearly, we submit, *damnum absque injuria*, unless the *building itself*, aside from its use, is a nuisance, which cannot be pretended, and is not alleged in the bill.   But even were the building itself a nuisance, and so averred, it is well settled that mere diminution of value of adjacent property, *without other irreparable injury*, furnishes no foundation for equitable relief.   *Attorney General* v. *Nichol*, 16 Vesey, 342, (per Eldon, Ld. Chan.) ; *White* v. *Cohen*, 19 Eng. Law and Eq. 146 ; *Kirkman* v. *Handy*, 11 Humph. (Tenn.) 409–10.   But here it is not a present nuisance that is complained of ; but only what the plaintiff assumes will become such at some future time, if the building, when completed, is put to certain uses.   We reply : a livery stable in the City of Providence is not *per se* a nuisance.   Too many already exist, and have always existed in every part of the city, as of every other city,—in fact, within a stone's-throw of this very locality.   See, too, *Kirkman* v. *Handy*, 11 Humph. (Tenn.) 406 ; *Harrison* v. *Brooks*, 20 Georgia, 537 ; express decisions that livery stables in towns and cities are not *per se* nuisances.   It by no means follows, therefore, that if a livery stable is opened in this building it will become a nuisance.   The most the plaintiff can claim is, it may or it may not, according to the manner in which it is kept.   In this locality, a well conducted and properly kept livery stable will rather prove a public convenience,—a convenience and benefit, rather than an injury, to the plaintiff's hotel estate.   At all events, it is what Lord Brougham calls, in *Earl of Ripon* v. *Hobart*, 3 Myln and Keene, 169, (8 Eng. Cond. Ch. 337,) an " *eventual* or *contingent nuisance*," and as to which he says, " that no instance can be produced of the interposition by injunction."   See, also, same case, 1 Cooper's Sel. Cases, 333, (8 Eng. Cond. Ch. 469) ; and *Barnes* v. *Baker*, 3 Atkyns, 750, by Lord Hardwicke, that " the fears of mankind, though they be reasonable ones, will not create a nuisance."   See, too, per Kent, C. J., in *People* v. *Sands*, 1 John. 90.   The averments in this bill of anticipated injury are but the expression of the plaintiff's *opinions, fears*,—not statements of facts ; and so are not admitted by the demurrer, nor

susceptible of answer. That courts of equity do not take jurisdiction over these *contingent nuisances*, see further : *Cummings* v. *Barrett*, 10 Cush. 186 ; *Hudson and Delaware Canal Co.* v. *New York and Erie Railroad*, 9 Paige, 323 ; *Grey* v. *Ohio and Pennsylvania Railroad Co.*, 1 Grant's Cases, Penn. 412 ; *Dumesnil* v. *Dupont*, 18 B. Mon. 800 ; *Tichenor* v. *Wilson*, 4 Halst. Chan. 197 ; *Gwin* v. *Melmoth*, 1 Freem. Chan. 505 ; *Wilder* v. *Strickland*, 2 Jones, Eq. N. C. 386, ; *Laughlin* v. *President*, &c., *of Lamasco*, 6 Ind. 223. We submit, therefore, it will be time enough for the plaintiff to seek the interference of this court to enjoin the defendant from the use of his estate, when that use actually proves to be a nuisance and a special and irreparable damage to the plaintiff ; and that until then, the court will leave the plaintiff to his legal remedies, which are full and adequate. Even then the remedy will be, not by destroying the defendant's property, as sought by this bill, but by limiting its use. *State* v. *Paul*, 5 R. I. 185, (194) ; *State* v. *Keeran*, 5 Ib. 497, (513) ; *Barclay* v. *Commonwealth*, 25 Penn. St. (1 Casey) 503 ; *Miller* v. *State*, 3 Ohio, (N. S.) 475.

II. As to the second ground on which the bill rests,—that the building is illegal, as infringing the act concerning buildings in that section of the city,—we say : 1. That act does not make the building a nuisance. For its infringement, the act itself prescribes the remedy and affixes the penalty ; and this court has no jurisdiction, even on information by the attorney general, much less on a bill, as here, by a private individual. *Attorney General* v. *Utica Insurance Co.* 2 John. Chan. 370, (379) ; *Mayor of Hudson* v. *Thorne*, 7 Paige, 261 ; *Smith* v. *Lockwood*, 13 Barb. 209 ; see, also, *Higgins* v. *Mayor, &c., of Princeton*, 4 Halst. Chan. 309. 2. But even if it did thereby become a nuisance *per se*, it is a *common public* nuisance ; and the bill alleges no special injury to this plaintiff arising from this cause. The plaintiff, therefore, cannot maintain this bill. To entitle him to do so, he must show some special injury, and that, too, of an irreparable character, that cannot be compensated in damages at law, peculiar to himself, and not suffered in common with the public or the community. *Irwin* v. *Dixion*, 9 How. 10, and cases there collected by Judge Woodbury ; *Georgetown* v. *Alexandria Canal*

*Co.* 12 Peters, 91; *Spooner* v. *McConnell*, 1 McLean, 337; and from the mere proximity of the plaintiff's estates, the court will not infer such special damage. *Higgins* v. *Princeton*, 4 Halsted, Chan. 309; *O'Brien* v. *Norwich and Worcester Railroad Co.* 17 Conn. 372; *Seeley* v. *Bishop*, 19 Ib. 128; *Smith* v. *Lockwood*, 13 Barb. 209.

*Currey, with whom was R. W. Greene, for the complainant:*

I. The defendant demurs to said bill and the plaintiff joins therein, and thereupon the plaintiff contends that the defendant admits by said demurrer—1. That he is constructing said building in violation of the statutes of the State.    2. That he is constructing said building to be used for a livery stable.    3. That the very construction of said building has already greatly damaged the plaintiff's said property.    4. That the use of said building for a livery stable will be an irreparable injury to the plaintiff's said property.

The plaintiff further contends—

II. That the erection and proposed use of said building for a livery stable is in violation of the principle, that a man shall not so use his own as to injure that of another.

III. That the admission by demurrer, that the use of said building for a livery stable will be an irreparable injury to the plaintiff's property, or will have a necessary tendency to such injury, is an admission that it will be a nuisance, and therefore unlawful. *Burditt* v. *Swenson*, 17 Texas, 489; *Pickard* v. *Collins*, 23 Barbour, 444; *Harvey* v. *Dewoody*, 18 Ark. 252; *Ray* v. *Lynes*, 10 Ala. 63; *Robeson* v. *Pittenger*, 1 Green's Ch. 57; 2 Eden's Injunctions, 270, and notes, and following pages and notes.

AMES, C. J.    This demurrer cannot be sustained, for want of equity in the bill.    The bill states, in substance, that the stable which is in the course of erection by the defendant, is designed to be used by him as a livery stable; and that being so used, it will, from its proximity to his dwelling house, hotel and stores, and by its disagreeable and unwholesome effluvia, its noise, flies, and other nuisances, cause him irreparable damage, by rendering his house untenantable, by breaking up the business and by diminishing the rents of his hotel and stores.    These are allega-

tions of facts, into the truth of which we are not to inquire upon this demurrer; but supposing them to be true, to ask ourselves, if the defendant's stable would not be a nuisance against which the complainant would be entitled to equitable relief, not, indeed, in the special mode prayed for, but in some appropriate mode, under his prayer for general relief?   We cannot say, as a matter of law, that a livery stable placed so near the complainant's dwelling house and hotel will not, by the unwholesome and disagreeable effluvia attributed to it in the bill, produce all the effects therein alleged, destructive to the complainant's property; and the demurrer admits that it will, as a matter of fact.   If this be so, how can we say, that a case may not be made out under the bill which will require us to interpose for the complainant's protection,—which is the test whether a bill in equity is demurrable for want of equity, as decided in *Dike and another* v. *Greene*, 4 R. I. Rep. 285.

A destructive nuisance may certainly be enjoined by a court of equity, although it is also the subject of ordinary legal redress. Nor is it true, that a bill to enjoin such a nuisance is demurrable, because it does not state that the rights of the parties, in support of the bill, have been settled by a judgment at law.   It may be very proper that they should be, if uncertain, before the court affords its specific relief; but the title of the plaintiff to the relief he asks may be admitted by the answer, as it is by this demurrer, and, then, why should it be further ascertained, to induce the action of the court?   As late as 1851, Sir Richard Kindersley, Vice-Chancellor, said, that it was true that equity will only interfere, in case of nuisance, where the thing complained of is a nuisance at law,—and that there was no such thing as an equitable nuisance,—but asks, "is it a ground of demurrer that the matter has not yet been tried at law?   It may be ground, and is ground very often, for refusing an injunction, upon motion; but is it ground of demurrer?   No, I am not aware of any cases in which it has been so determined." *Soltau* v. *De Held*, 9 Eng. L. & Eq. 117; and see *Sprague* v. *Rhodes and others*, 4 R. I. Rep. 301.

Our attention was directed by the counsel for the defendant to two cases, in which it was said that demurrers were sustained to

such a bill as this : *Kirkman* v. *Handy*, 11 Humph. R. 406, and *Harrison* v. *Brooks*, 20 Geo. 537. Upon looking into these cases, we find, that in the first, the demurrer was disallowed, and the bill went to a hearing ; and in the other, that the case came before the Supreme Court of Georgia, after answer, upon exceptions to the rulings of a judge of the Superior Court of that state, upon a motion to dissolve, or modify by giving security, a special injunction that had been granted in it, upon the ground, that the equity of the bill had been fully met by the answer, which the judge below had overruled.

In fine, without touching the other questions which have been argued, and without expressing an opinion upon the merits of this case, which we reserve until we can know what in truth the case is, we can only express our regret at the delay caused by the interposition of this demurrer, and overruling it, order the defendant to answer the bill; the question with regard to the costs of this term being reserved.